# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

UNITED STATES OF AMERICA

          **Plaintiff,**

  **v.**

KAABA MAJEED,
YUNUS RASSOUL,
   **a.k.a. YUNUS RASSOULL,**
JAMES STATON,
   **a.k.a. ADAM WINTHROP,**
RANDOLPH RODNEY HADLEY,
DANIEL AUBREY JENKINS, and
DANA PEACH,

          **Defendants.**

**Case No. 21-20060-JAR**

## TRIAL BRIEF

The United States of America, by and through undersigned counsel, respectfully submit this memorandum to aid the Court should certain evidentiary issues arise at trial.

### I.    Procedural History, Factual Background, and Charges and Elements

The government relies on previously filed submissions, which discuss the procedural history, factual background, and charges in this case.   *See* Docs. 179-181, 183-187, 233, 249, 269.

### II.    Anticipated Legal Issues

#### a.   Issues Regarding Withdrawal from Conspiracy

##### i.   Defendants Bear the Burden of Demonstrating Affirmative Withdrawal from the Conspiracy

Several defendants have indicated they will argue that they withdrew from the conspiracy, either as a defense to certain charges or as a defense based on the statute of limitations.   To

1

successfully withdraw from a conspiracy, a defendant must show that they attempted to undo the wrong by "(1) giving the authorities information with sufficient particularity to enable the authorities to take some action to end the conspiracy, or (2) communicate their withdrawal to their coconspirators in a manner that reasonably and effectively notifies the conspirators that they will no longer be included in the conspiracy." *United States v. Morgan*, 748 F.3d 1024, 1037 (10th Cir. 2014) (quoting *United States v. Randall*, 661 F.3d 1291, 1294-95 (10th Cir. 2011)); *see also* Tenth Circuit Criminal Pattern Jury Instruction 2.22 ("In order to find that the defendant withdrew from the conspiracy, you must be convinced that the defendant has proven by a preponderance of the evidence that he took an affirmative step to either defeat the purpose of the conspiracy, either by reporting to the authorities or communicating to his coconspirators that he was no longer participating in the conspiracy.").

1. Passive Non-participation Is Not Sufficient to Withdraw from a Conspiracy

Courts have concluded that mere passive nonparticipation is insufficient to demonstrate that a defendant withdrew from a conspiracy. *See, e.g.*, *United States v. Serr*, 817 F. App'x 598 (10th Cir. 2020).   In contrast, one way a defendant can successfully withdraw from a conspiracy is by notifying the authorities with information sufficient to end the conspiracy.   *See United States v. Grimmett*, 236 F.3d 452 (8th Cir. 2001) (holding that the defendant successfully withdrew because she provided law enforcement information about other people involved with the conspiracy).   A defendant can also successfully withdraw if they clearly communicate their withdrawal to a co-conspirator.   *See United States v. Thornburgh*, 65 F.3d 1197, 1206-07 (10th Cir. 2011) (holding that the defendant failed to withdraw because he continued to perform discreet tasks in furtherance of the conspiracy).   Finally, courts have found that resignation from an

organization alone does not effectively constitute withdrawal from a conspiracy. *See, e.g.*, *United States v. Burger*, 964 F.2d 1065, 1070-71 (10th Cir. 1992) (finding that the defendant failed to show that he terminated his involvement in the conspiracy by resigning). When a defendant does succeed in withdrawing, however, they can always re-establish their link to a conspiracy if they commit an act after their withdrawal that furthers or supports the conspiracy. *See generally United States v. Berger*, 224 F.3d 107, 118 (2d Cir. 2000) (noting that the defendant's lie to law enforcement officers after his supposed withdrawal re-established his link to the conspiracy).

Nor does a defendant legally withdraw from a conspiracy by being a passive non-participant in the conspiracy. In *United States v. Smith*, a jury convicted the defendant of conspiracy to distribute narcotics and conspiracy in violation of RICO. *See United States v. Smith*, 568 U.S. 106, 108-09 (2013). The defendant appealed his conviction, arguing that he presented evidence that he ended his membership in the conspiracy prior to the expiration of the statute of limitations, and it was the government's burden to prove that his individual participation in the conspiracy persisted beyond that. *Id.* at 110. The Court rejected the defendant's argument and stated that the affirmative defense of withdrawal lies with the defendant to prove. *Id.* at 110, 112. In so holding, the Court emphasized that "passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy." *Id.* at 112-13. The Court went on to reject the defendant's claim that assertion of a statute-of-limitations defense shifts the burden of disproving withdrawal to the government because "that is incompatible with the established proposition that a defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely inactive after joining it." *Id.* at 114. The Court thus affirmed the conviction below, where the trial court had defined withdrawal as "affirmative acts

inconsistent with the goals of the conspiracy that were communicated to the defendant's co-conspirators in a manner reasonably calculated to reach those co-conspirators." *Id.* at 109, 114.

In *United States v. Serr*, the Tenth Circuit found that a conspirator's arrest or incarceration by itself is insufficient to constitute withdrawal from a conspiracy. *See United States v. Serr*, 817 F. App'x 598, 604 (10th Cir. 2020). A jury convicted the defendant of conspiracy for possession of methamphetamine with intent to distribute. *Id.* at 601. The defendant was planning to meet his coconspirators to sell drugs to them in October 2016, but when he was driving, a police officer stopped him, and he was unable to participate in the drug deal. *Id.* at 600-01. The officer arrested the defendant, and he pled guilty to a state charge of possession with intent to distribute. The other coconspirators, however, continued to deal drugs after his incarceration. *Id.* at 600. The defendant appealed and argued that his incarceration precluded him from being a member of the second conspiracy. *Id.* at 603. The Tenth Circuit rejected this argument, finding that the law is clear on the requirement for withdrawal. *See id.* at 604. Specifically, the Tenth Circuit held that that an individual must take affirmative action, either by reporting the criminal conspiracy to the authorities or by communicating his intentions to coconspirators to leave the conspiracy. *Id.*; *see also United States v. Melton*, 131 F.3d 1400, 1405 (10th Cir. 1997) (noting that a conspiracy does not just end simply because one coconspirator has been arrested). The Tenth Circuit went on to state that the "affirmative-withdrawal requirement means that '[m]ere cessation of one's participation in a conspiracy is insufficient to demonstrate withdrawal.'" 817 F. App'x at 604 (quoting *United States v. Randall*, 661 F.3d 1291, 1294 (10th Cir. 2011)). The Tenth Circuit emphasized its holding by quoting the Supreme Court in *Smith* that "[p]assive nonparticipation in

the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy." *Id.* (quoting *Smith*, 568 U.S. at 112-13).

Similarly, in *United States v. Randall*, the defendant appealed his conviction to commit a RICO violation, arguing that the district court abused its discretion by failing to instruct the jury on a withdrawal defense. *See United States v. Randall*, 661 F.3d 1291, 1293 (10th Cir. 2011). The defendant was a member of the Crips gang in Wichita, Kansas, and sold controlled substances for the Crips between 1991 and 2007. *Id.* He argued that he withdrew from the gang, because he told a department of corrections official that he was no longer a member of a gang, he had children, got a job, and attended church. *Id.* at 1294. However, the Tenth Circuit found:

> In order to withdraw from a conspiracy, a conspirator must attempt to undo the wrong that has been done in one of two ways. First, a coconspirator can give authorities information with sufficient particularity to enable the authorities to take some action to end the conspiracy . . . A second way that a conspirator can withdraw from a conspiracy is to communicate his withdrawal directly to his coconspirators in a manner that reasonably and effectively notifies the conspirators that he will no longer be included in the conspiracy . . . .

*Randall*, 661 F.3d at 1294-95. The Tenth Circuit found that the defendant did not provide sufficient evidence to demonstrate that he had withdrawn from the conspiracy and upheld his conviction. *Id.* at 1296. Specifically, the court stated that "'[m]aturing out' of a gang, without more, does not meet the legal definition of withdrawal from a conspiracy. . . [M]erely hoping that the Crips organization would infer his withdrawal from his absence is not enough." *Id.* at 1295. The Tenth Circuit emphasized that the withdrawal communication "must be unambiguous and effective." *Id.*; *see also United States v. Parnell*, 581 F.2d 1374, 1384 (10th Cir. 1978) ("In order to withdraw from a conspiracy an individual must take affirmative action, either making a clean

breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators.").

> 2. <u>A Defendant Successfully Withdraws from a Conspiracy When They Take an Affirmative Action by Providing the Authorities with Sufficiently Particular Information to Enable Authorities to Take Some Action to End the Conspiracy</u>

In *United States v. Harris*, the Tenth Circuit held that notifying the authorities of the defendant's participation in a conspiracy is insufficient to effectively withdraw from a conspiracy. *See* 695 F.3d 1125, 1138 (10th Cir. 2012). A jury convicted the defendant of conspiracy in violation of RICO. *Id.* at 1130. The defendant and several of his coconspirators were members of the Crips gang in Wichita, Kansas. *Id.* at 1129. The defendant was alleged to be a major drug supplier involved in drug trafficking. *Id.* On appeal, the defendant argued that he was entitled to a jury instruction on the affirmative defense of withdrawal. *Harris*, 695 F.3d at 1136. In addressing the defendant's arguments on withdrawal, the Tenth Circuit stated that "simply ceasing participation in the conspiracy does not constitute 'withdrawal.'" *Id.* at 1137 (citing *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999)). The defendant argued that he withdrew from the conspiracy because he became a Muslim and rejected the gang lifestyle, and he cooperated with police and notified them that he used to be a member of the gang but left the organization. *Id.* The Tenth Circuit rejected the defendant's arguments, because he failed to give the authorities information "with sufficient particularity to enable authorities to take some action to end the conspiracy," and that simply notifying authorities of previous involvement with a gang, does not enable authorities to end the conspiracy. *Id.* at 1138. The Tenth Circuit thus concluded that the district court did not abuse its discretion by refusing to instruct the jury on a withdrawal instruction,

because the defendant failed to present sufficient evidence that he withdrew from the alleged conspiracy. *Id.*

    ii.  <u>A Defendant Successfully Withdraws from a Conspiracy by Communicating Abandonment in a Manner Reasonably Calculated to Reach Co-conspirators</u>

In *United States v. Thornburgh*, the Tenth Circuit found that a defendant does not withdraw from a conspiracy when they continue to perform discrete overt acts in furtherance of the conspiracy, even after communicating their withdrawal to a coconspirator. *See United States v. Thornburgh*, 645 F.3d 1197, 1206-07 (10th Cir. 2011). A jury convicted the defendant of conspiracy to commit mail and wire fraud and conspiracy to commit money laundering. *Id.* at 1200. In holding there was sufficient evidence to find that defendant did not withdraw from the conspiracy before the statute of limitations ran, the Tenth Circuit stated that a defendant can communicate their withdrawal by taking "affirmative actions 'inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators.'" *Id.* at 1205, 1207. The defendant claimed that he withdrew from the conspiracy because he wrote a letter to one of his co-conspirators notifying him that he was no longer doing business with him. *Id.* at 1205-06. However, the government presented evidence that showed that the defendant still worked with another co-conspirator, and numerous investors testified to the defendant's continued involvement—such as reaching out to investors relating to their investments, convincing investors to make more bond investments, and receiving payments from investors for the defendant's living expenses and hotel bills. *Id.* at 1206. The Tenth Circuit ultimately held that these actions overcame any attempt to communicate with one co-conspirator that he had withdrawn, and the evidence supported the jury's rejection of defendant's defense. *Id.* 1205.

7

Similarly, in *United States v. Hughes*, the defendant, in his individual capacity, did not withdraw from a conspiracy when he signed a letter as the trustee to a corporation.  *See United States v. Hughes*, 191 F.3d 1317, 1322 (10th Cir. 1999).   A jury convicted the defendant of conspiracy to defraud the government.  *Id.* at 1319.   The defendant argued that he withdrew from the conspiracy when the corporation, ARCO Business Services, withdrew from the conspiracy via a letter the defendant signed as the company's trustee.  *Id.* at 1321-22.   The Tenth Circuit, however, concluded that the defendant himself failed to establish an affirmative action to withdraw because the letter did not refer to the defendant individually.  *Id.* at 1322.   Specifically, "[t]he letter stated that ARCO 'does not intend to seek or claim further benefit of any kind,' asks to whom 'ARCO should send any notice of its position,' and requests that [the co-defendant] 'convey ARCO's current position . . . to all of the other concerned/involved parties . . . ."  *Id.*   Because the letter was speaking as the corporation, though, the Tenth Circuit found that this did not meet the necessary action for the defendant to prove he withdrew from the conspiracy. *Id.* at 1322.

      iii.   <u>Resignation from an Organization Alone Is Insufficient to Constitute Successful Withdrawal from a Conspiracy</u>

In *United States v. Burger*, the Tenth Circuit rejected the defendant's attempt to withdraw his guilty plea on appeal, because he also failed to show that he terminated his participation in the conspiracy.  *See United States v. Burger*, 964 F.2d 1065, 1070-71 (10th Cir. 1992).   At the trial level, the defendant sought to withdraw his guilty plea after receiving his presentencing report.  *Id.* at 1068.   The district court denied his motion, finding that "although [he] was forced to resign in 1988, 'his participation and ownership in the joint ventures, corporations, partnerships and property which was obtained with money illegally defrauded. . . continued unimpeded until the issuance of the Indictment.'"  *Id.*   Specifically, the district court had emphasized that his "forced

resignation did not amount to an affirmative withdrawal or disavowal of the conspiracy." *Id.* The Tenth Circuit agreed with the district court and held that the defendant failed to show a "fair and just" reason for withdrawing his plea because, although he agreed not to continue his involvement, he did in fact continue his participation and ownership in the joint ventures, corporations, partnerships, and property, and his participation continued unimpeded until the indictment was issued. *Id.* at 1071.

In *United States v. Vallone*, the Seventh Circuit found that the defendant's resignation from the Aegis Company conspiracy did not constitute a withdrawal because he failed to disavow the conspiracy. *See United States v. Vallone*, 698 F.3d 416, 494 (7th Cir. 2012), *vacated on other grounds by Dunn v. United States*, 570 U.S. 901 (2013). The scheme involved concealing a trust purchaser's assets and income from the IRS, thereby reducing a client's apparent tax liability. *Id.* at 432. The defendant resigned as Managing Director of Aegis in January 2000, and he considered this action to act as a withdrawal from not only the company but also from the charged conspiracy and scheme to defraud. *Id.* at 493. Further, he argued that his letter that he sent to a co-conspirator in June 2000 was a sufficient announcement to notify the co-conspirators of his withdrawal. *Id.* at 494. The Seventh Circuit rejected this argument, stating that "to effectuate a legally meaningful withdrawal from the conspiracy, the defendant's announcement must also 'disavow[ ] the conspiracy and its criminal objectives.'" *Id.* (quoting *United States v. Morales*, 655 F.3d 608, 640-41 (7th Cir. 2011)). His letter to the co-conspirator did not constitute effective withdrawal, because nothing in his letter disavowed or renounced the Aegis system, because, while he expressed disapproval of certain actions taken, the letter "voiced no disapproval of the Aegis system or the validity of the tax returns Aegis clients would be filing." *Id.* at 494. Thus, the

Seventh Circuit found that the defendant's departure from the company did not constitute a "legally effective withdrawal." *Id.*

In *United States v. Bergman*, the defendant moved for judgment of acquittal, but the district court denied his motion, finding that there was a question of law as to whether the defendant successfully withdrew from the conspiracy. *United States v. Bergman*, 852 F.3d 1046, 1065 (11th Cir. 2017). A jury convicted the defendant of conspiracy to commit health care and wire fraud and conspiracy to make false statements related to healthcare matters. *Id.* at 1052. The defendant was a licensed physician's assistant who falsified notes for patients that he did not see and introduced himself as a doctor to other patients. *Id.* at 1055. The defendant alleged that he voluntarily resigned because of the fraud. *Id.* at 1064. The Eleventh Circuit recognized that "resignation from the conspiring business has frequently been held to constitute effective withdrawal." *Id.* at 1063 (citing *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999)). At issue in that case, though, was whether the defendant disavowed or defeated the conspiratorial objectives by ceasing to work at the company. *Id.* The defendant presented testimony that he voluntarily resigned because of the fraud, he informed his co-conspirators that he was resigning, and his wife sent a resignation letter in the mail (although this letter was not introduced into evidence). *Id.* at 1064. In contrast, his co-conspirator testified that he was being let go because of his unsatisfactory work, and she gave the defendant, like other employees she had to terminate, a chance to resign before firing them and explained that was why he submitted the resignation. *Id.* The court found that this factual dispute was properly submitted to the jury. *Id.* at 1064-65. Specifically, the court found that the evidence showed that the defendant ceased participation because he was given no choice. *Id.* at 1065. Specifically,

"the jury could reasonably find that [the defendant] only resigned under threat of firing and that his departure in those particular circumstances was not an affirmative step on his part 'to disavow or defeat' the objectives of the conspiracy." *Id.*

In *United States v. Antar*, the Third Circuit established that resignation alone is insufficient to constitute withdrawal from a conspiracy. *See United States v. Antar*, 53 F.3d 568, 584 (3d Cir. 1995), *overruled on other grounds by United States v. Churuk*, 797 F. App'x 680 (3d Cir. 2020). The defendants there ran a consumer retail chain store for electronics starting in the 1970s, and from 1980-1983 they ran a practice of "cash skimming." *Id.* at 570-71. The defendant argued that his resignation from the enterprise barred him from liability for conspiracy. *Id.* at 579-80. For several years, the defendant served on the board of directors, but in June 1987 he resigned from the board. *Id.* at 579. The Third Circuit established a test to determine when retirement or resignation from an enterprise constitutes withdrawal from a conspiracy:

> (1) resignation from the enterprise does not, in and of itself, constitute withdrawal from a conspiracy as a matter of law; (2) total severing of ties with the enterprise may constitute withdrawal from the conspiracy; however (3) even if the defendant completely severs his or her ties with the enterprise, the defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to receive benefits from the conspiracy's operations.

*Antar*, 53 F.3d at 583. The Third Circuit found that the defendant did not establish withdrawal, because he failed to sever all ties with the enterprise and noted that the defendant still retained stock in the enterprise during the five-year statute of limitations period. *Id.* Further, the defendant failed to produce evidence that he acted inconsistently with the goal of the conspiracy. *Id.* at 584.

In *United States v. Berger*, the Second Circuit found that the defendant failed to establish adequate withdrawal as a matter of law because his resignation failed to disavow the conspiracy.

11

*See* 224 F.3d 107, 118 (2d Cir. 2000).   The defendants were involved in a scheme to defraud the Department of Education by falsely enrolling residents into a fake institution.   *Id.* at 111-12.   The Second Circuit stated that "resignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law; more is required."   *Id.* at 118.   The Second Circuit found that the defendant failed to fully abandon the conspiracy after his resignation in 1991.   *Id.* at 119. The defendant's resignation letter helped further the conspiracy, because it repeated the lies that the institution was legitimate for purposes of receiving the Pell Grant.   *Id.*   The defendant also did not act in his capacity as the trustee to advise the entity of the conspiracy, and not telling the entity advanced the goals of the conspiracy.   *Id.*   The Second Circuit noted that while a defendant need not turn in his co-conspirators or warn victims, the defendant's actions suggested that he did not renounce the goals of the conspiracy.   *Id.*   Finally, the court found that the defendant lied to law enforcement agents in 1996—thereby reestablishing his link by helping to conceal the conspiracy from investigators. *Id.*

In *United States v. Eisen*, the Second Circuit also found that the defendants did not effectively withdraw from the conspiracy, because mere cessation of conspiratorial activity is not enough to satisfy the stringent standard.   *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992). The defendant argued that he withdrew from the conspiracy when he left the firm as its "in-house" investigator.   *Id.*   The court rejected his argument, because he worked for the firm on an *ad hoc* basis, and even though there was no illegality in the work he did, his continued association with the firm was significant.   *Id.* at 268-69.   The Second Circuit emphasized in its holding that mere cessation of illegal conduct is insufficient to prove withdrawal from conspiracy.   *Id.* at 269.   The second defendant contended that he withdrew from the conspiracy when he resigned from the firm

to work for another independent law firm.   *Id.* at 269.   The second defendant relied on the court's holding in *Nerlinger*, where the court found that the defendant had withdrawn from the conspiracy by resigning from the brokerage firm and closing the account.   *Id.* (citing *United States v. Nerlinger*, 862 F.2d 967, 974-75 (2d Cir. 1988) (reasoning that by closing the account the defendant had foreclosed the possibility of further participation in the conspiracy and relinquished any claim to subsequent profits)).   However, the Second Circuit rejected the defendant's argument based on *Nerlinger*, because the second defendant continued to be entitled to a percentage of the recovery on all cases he tried even after his resignation.   *Id.*   Further, the district court relied on evidence that the defendant sought to convince someone to lie to investigators after he supposedly withdrew from the conspiracy.   *Id.* at 269 n.8.   The Second Circuit thus affirmed his convictions, finding that he failed to prove that he withdrew from the conspiracy.   *Id.* at 269.

> b.   Hearsay Issues

The government anticipates several potential hearsay issues at trial, most of which can be resolved at time of admission using standard hearsay exceptions under Fed. R. Evid. 803. However, in anticipation of admission of many statements known at this time, the government submits analysis of three scenarios below:

> i.   The Government Can Admit Statements made by Defendants and Co-Conspirators, as well as Additional Statements Providing Context for those of the Defendants or Co-Conspirators

First, a statement is "not hearsay" if it is offered against a party and is the party's own statement.   Fed. R. Evid. 801(d)(2)(A).   The government need only show by a preponderance of the evidence that the defendant made the statements in order for the statements to be admissible

under Fed. R. Evid. 801(d)(2)(A).  *See*, *e.g.*, *United States v. Lang*, 364 F.3d 1210, 1222 (10th Cir. 2004).

Second, as already argued in the *James* hearing, Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that an out of court "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy."  Regardless of a statement's independent reliability or the declarant's availability, coconspirator statements are not hearsay and are admissible if the government establishes, by a preponderance of evidence, that: (1) a conspiracy existed; (2) the defendants and the declarants were members of that particular conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995); *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990).

Third, "[i]t is well-settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay as defined in Rule 801 of the Federal Rules of Evidence." *United States v. Macari*, 453 F.3d 926, 941 (7th Cir. 2006).

In this case, the government obtained emails sent and received by the defendants and co-conspirators, and several of these emails are of evidentiary value.  As previously argued, these emails include statements made to execute or transact the business of the conspiracy; statements regarding the conspiracy's activities; statements to recruit potential co-conspirators; statements to reassure members of a conspiracy's continued existence; statements identifying other members of a conspiracy and their roles; and statements to conceal the criminal activities of the conspiracy. *See* Doc. 184.

14

Given the above, the government submits that all the above-mentioned emails are admissible in full, and not limited to merely the co-conspirator statements, in order to provide the necessary context to fully understand the defendants' or co-conspirators' statements in the course of the message exchanges and conversations.   If the jury is not permitted to consider the other side of the message exchanges or conversations, the defendants' responses and comments in these exchanges would be nonsensical and meaningless.   To the extent the incoming messages are not offered to prove the truth of the matter asserted but are included to provide context for the outgoing messages attributed to a defendant, they are not hearsay.   *United States v. Benford*, No. CR-14-321-D, 2015 WL 631089, at *4 (W.D. Okla. Feb. 12, 2015), *aff'd*, 875 F.3d 1007 (10th Cir. 2017); *See*, *e.g.*, *United States v. Gajo*, 290 F.3d 922, 930 (7th Cir. 2002) ("statements are not hearsay to the extent they are offered for context and not for the truth of the matter asserted"); *United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009) (finding that the admission of recorded calls "were not offered for their truth, but to provide context for Bermea-Boone's admissions concerning the drug conspiracy and to make those admissions intelligible for the jury"); *United States v. Schalk*, 515 F.3d 768, 775 (7th Cir. 2008) (recognizing government informant's statements on recorded call with defendant were admissible because they provide context for the defendant's admissions); *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (finding that emails were not offered to prove the truth of the matters asserted, but rather they provided context for the defendants' messages sent in response); *Macari*, 453 F.3d at 941 (observing that without the other statements, the defendant's admissions "would not have made any sense").

ii.  The Defendants' Prior Out-of-Court Statements Are Admissible by the Government but the Defendants Cannot Offer Their Own Prior Out-of-Court Statements

The government intends to introduce evidence regarding numerous statements—oral, written, and recorded—that the defendants made to other individuals.   These statements include statements Defendants Majeed and Rassoul made to law enforcement, written affidavits provided by the defendants in motions hearings, and written statements the defendants authored and distributed in UNOI.   The government also intends to introduce evidence of verbal statements the defendants made to other witnesses.   The government anticipates referencing these statements during its opening statement and admitting evidence of the statements during its case-in-chief. All of these statements are admissible pursuant to Fed. R. Evid. 801(d)(2), which provides that a defendant's own statements are admissible, non-hearsay admissions of a party-opponent when offered into evidence by the United States.   *See* Fed. R. Evid. 801(d)(2)(A).   The government may offer all, some, or none of a defendant's statements at trial under Rule 801(d)(2).

A defendant, however, cannot use this rule to offer his own prior out-of-court statements. Such statements are inadmissible hearsay because the defendant is the proponent and thus the statements are not offered against him.   *See United States v. Begay*, 497 F. Supp. 3d 1025, 1053 (D.N.M. 2020) (noting that [h]earsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination"); *see also United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (noting that the rules of evidence do not "provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party"); *United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007); *United States v.*

*Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th

Cir. 1988).   Absent some applicable hearsay exception, if a defendant wants to tell his side of the

story, he must take the stand and testify under oath and be subject to cross-examination.   *See*

*Wilkerson*, 84 F.3d at 696 (upholding trial court's prohibition of defendant eliciting his own

exculpatory statements from agent on cross-examination); *United States v. Ford*, 761 F.3d 641,

652 (6th Cir. 2014) (upholding district court's prohibition of defendant eliciting his own out-of-

court statements through cross-examination of government witness and recognizing that "[t]his

hearsay exception does not . . . extend to a party's attempt to introduce his or her *own* statements

through the testimony of other witnesses") (internal quotation omitted).

The defendants also may not rely on Federal Rule of Evidence 106, the Rule of

Completeness, to admit portions of their own out-of-court statements, even after the government

has admitted other portions of these statements.   Rule 106 provides that "[i]f a party introduces

all or part of a statement, an adverse party may require the introduction, at that time, of any other

part—or any other statement—that in fairness out to be considered at the same time.   The adverse

party may do so over a hearsay objection."   Fed. R. Evid. 106.   Rule 106 was amended slightly

on December 1, 2023. [1]   This Rule "does not necessarily require admission of [an entire

statement].   Rather, only those portions which are relevant to an issue in a case and necessary to

---

[1] As explained by the Advisory Committee Notes: "The amendment does not give a green light
of admissibility to all excised portions of statements. It does not change the basic rule, which
applies only to the narrow circumstances in which a party has created a misimpression about the
statement, and the adverse party proffers a statement that in fact corrects the misimpression. The
mere fact that a statement is probative and contradicts a statement offered by a party opponent is
not enough to justify completion under Rule 106." Fed. R. Evid. 106, Advisory Committee Note
(2023 Amendment).

clarify or explain the portion already received need to be admitted." *United States v. Lopez-Medina*, 596 F.3d 716, 735 (internal citations and quotations omitted).   To determine whether a disputed portion of a statement should be admitted under the Rule , a court should consider whether it is necessary to "(1) explain[] the admitted portion, (2) place[] the admitted portion in context, (3) avoid[] misleading the trier of fact, and (4) ensure[] a fair and impartial understanding of the evidence." *United States v. Lopez-Medina*, 596 F.3d 716, 735 (internal citations and quotations omitted).   However, the Rule of Completeness does make otherwise inadmissible evidence admissible, nor does it require the admission of self-serving, exculpatory statements made by a defendant, who is the non-adverse party of statements introduced by the government.   *See United States v. Davis*, 75 F.4th 428, 436 (4th Cir. 2023) (the Rule does not "require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party"); *United States v. Evers*, No. 3:19-cr-250, 2022 WL 16748601, at *9 (M.D. Pa. Nov. 7, 2022) ("[P]ursuant to common sense and unrefuted authority cited by the Government, statements which are not admissible pursuant to Rule 801(d)(2) or any other hearsay exception are not admissible in the 'fairness' context of Rule 106.").   Accordingly, if a defendant seek to use Rule 106 to introduce a portion of his own out-of-court statement that neither explains nor clarifies a portion of the statement introduced by the government, the Court should preclude that defendant from doing so.   *See Wilkerson*, 84 F.3d at 696 ("[W]hen [Rule 106] does apply, its purpose is to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received.").

iii.  If a Withdrawal Instruction Is Warranted, the Jury Can Be Instructed that Co-conspirator Statements Made After the Date of Withdrawal Are Not Admissible Against that Defendant

At the motions hearing on February 2, 2024, the parties and the Court briefly discussed how to deal with the issue of withdrawal and any co-conspirator declarations admitted pursuant to Rule 801(d)(2)(E), but which occur after a given defendant contends he or she withdrew from the conspiracy.  Doc. 322 at 99-103.  It is premature to determine whether there will be sufficient evidence for any of the defendants to meet their burden and entitle them to an instruction regarding withdrawal.

However, assuming a withdrawal instruction is warranted, it can be supplemented to instruct the jury that if it finds that a given defendant withdrew from the conspiracy by a certain date, it must not consider against him or her any co-conspirator statements made after that date. *See United States v. Alvarez-Gonzalez*, 2013 WL 12196765, at * (D. Colo. Nov. 27, 2013) ("If a defendant has effectively withdrawn from a conspiracy, 'statements made thereafter by his co-conspirators would not [be] admissible against him.'" (quoting *United States v. Cardall*, 885 F.2d 656, 668 n.22 (10th Cir. 1989))).  Such an instruction would properly inform the jury how, and how not, to consider the evidence it receives.  *See United States v. Rankin et al.*, 3:18-cr-00272-JAM, Doc. 478 at 19-20 (D. Conn. Dec. 7, 2021) (instructing the jury that "[i]f you conclude that he withdrew from the conspiracy in October 2015, then this does not exonerate him for any prior knowing and willful membership in the conspiracy, but you may not consider as to this element against Mr. Sullivan the acts or statements of any coconspirators that occurred after October 2015"); *United States v. Novak et al.*, 1:13-cr-00312, Doc. 636 at 38 (N.D. Ill. Mar. 12, 2015) (instructing the jury that "[i]f you find that the government has proven that the charged conspiracy

existed, but that Mr. Nagelvoort has shown that it is more likely than not that he withdrew from the alleged conspiracy as of April 28, 2011, then you may not consider as evidence against him any statements made by any alleged co-conspirators after that date").

       c.  <u>Emails Will Be Admissible Through Proper Authentication</u>

The government anticipates admitting a number of emails as exhibits at trial.   These will be authenticated by the testimony of a person with knowledge of the email pursuant to Federal Rule of Evidence 901(b)(1), and a hearsay exception will be provided for the substance of each email.   Ultimately, the government need only provide "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); *United States v. Simpson*, 152 F.3d 1241, 1250 (10th Cir. 1998).   The government will provide additional authentication by showing the exhibits' "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with other circumstances."   Fed. R. Evid. 901(b)(4); *see*, *e.g. United States v. Fluker*, 2012 WL 5275244 (7th Cir. Oct. 26, 2012) (emails can be authenticated and connected to the sender by the testimony of the person receiving them and by their content).   "Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury."   *Id*.   One such method of authentication will be testimony that the email addresses themselves contain the names of the persons connected to the addresses.   *See*, *e.g.*, *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006), *rev'd on other grounds*, 528 F. 3d 957 (D.C. Cir. 2008).

      d.  <u>Preclusion of Improper Impeachment and Argument</u>

           i.  <u>Improper Use of Investigative Reports</u>

Every circuit court to address the question has held that law enforcement interview summaries generally are not discoverable under the Jencks Act.   *See, e.g.*, *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that interview summaries "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the law enforcement summaries, "these documents are not discoverable under . . . the Jencks Act"). Although production of law enforcement summaries is not required, the government has provided broad discovery, including those summaries of the government's witnesses' prior interviews.   The defense should be limited to using those summaries consistent with the law and Federal Rules of Evidence.   In particular, the defense should not be permitted to cross-examine or seek to impeach a witness with an investigative report that the witness has not signed or otherwise adopted.

Under the Federal Rules of Evidence, a witness may only be cross-examined and, where appropriate, impeached with his or her own prior statements.   *See* Fed. R. Evid. 613.   Indeed, the Supreme Court has long recognized that it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."   *Palermo v. United States*, 360 U.S. 343, 350 (1959).   After all, in preparing investigative summaries, law enforcement officers necessarily exercise discretion in drafting reports.   *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (noting that FBI 302s "have been deemed inadmissible

for impeaching witnesses on cross-examination"), *abrogated on other grounds*, *United States v. Booker*, 543 U.S. 222 (2005); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.").

Investigative reports are not the "statements" of the interviewed individuals. *See Jordan*, 316 F.3d at 1252 (noting that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"). As a result, courts have routinely held that these types of law enforcement reports cannot be used to cross-examine or impeach interviewed parties if they are called as witnesses. *See United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) (providing that "a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own"); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (affirming refusal to admit FBI interview report as a prior consistent statement because it was "not attributable to" the witness); *United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir. 1979) (defense could not use FBI reports to cross examine witnesses because "reports did not come within the rule authorizing the use of prior statements"); *United States v. Rizza*, 2014 WL 3747624, at *2 (M.D. Fla. July 29, 2014) ("Defendants are precluded from depicting such 302s and summary reports as witness statements during the trial.").

The defendants should not be permitted, therefore, to refer to any "302" or witness interview report during any witness's testimony, unless that witness prepared the report. The

existence of any "302" or witness interview report is not relevant to any fact to be determined by the jury.   Tactics like waiving around "302s" or witness interview reports saying, "it says here in this FBI report that I'm reading," are not proper and should be prohibited.   In refreshing a witnesses' recollection (if it, in fact, needs to be refreshed), counsel should not be permitted to announce what it is that he or she is showing to the witness.

Defense counsel also should be required to adhere to the Federal Rules of Evidence in cross-examining witnesses on alleged prior inconsistent statements.   Defense counsel should be required to establish that the witness in fact remembers making the allegedly inconsistent statement to the investigative agent without referring to the written report.

## ii.   Good Faith Basis for Cross-Examination (Rule 611(a))

Under Federal Rule of Evidence 611(a), the Court exercises control over the interrogation of witnesses and the presentation of evidence to facilitate the ascertainment of the truth.   Rule 611 provides: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."   Fed. R. Evid. 611(a).   The Rule further provides: "Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility.   The court may allow inquiry into additional matters as if on direct examination." Fed. R. Evid. 611(b).

Implicitly included within the mandate of Rule 611(a) is the obligation to ensure that questions asked of witnesses, arguments of counsel, and the presentation of evidence are grounded in fact.   Significantly, a lawyer's representation that his or her client provided the basis for a

question is not necessarily a sufficient factual basis, particularly where the question is prejudicial. In *United States v. Lin*, 101 F.3d 760, 767 (D.C. Cir. 1997), the court upheld a trial court's restriction of the cross examination of a government witness. The defense attorney asked the witness whether he was involved in a gambling business. The government objected, and the court asked defense counsel to provide a factual basis for the question. In response, the defense attorney indicated that his only witness was his client. The court offered to hold a hearing, but the defense attorney declined to put his client on the stand to establish a good-faith basis for the cross examination. As a result, the trial court refused to allow the line of questioning. On appeal, the district court's ruling was affirmed. The appellate court explained that "counsel must have a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness and thereby create an unfounded bias which subsequent testimony cannot fully dispel." *Id.* at 768 (internal quotations omitted).

### iii.   Improper Testimony or Argument Regarding Statutes Charged

The government asks the Court to exclude testimony regarding charging decisions made by the government regarding which statutes were used in the Indictment. As demonstrated in the Rule 15 deposition of MV-3 on February 1, 2024, the defense—on multiple occasions—asked the witness to explain whether other statutes could apply to the situation at hand. For example, during his cross-examination of MV-3 at the deposition, defense counsel suggested to MV-3 that the Fair Labor Standards Act was the appropriate governing law for child labor violations. *See, e.g.*, February 1, 2024 MV-3 Rule 15 Deposition Transcript, p. 202, lines 3-14 ("There's a law called the Fair Labor Standards Act of 1938 that governs the use of children, paying children in working conditions. It's a civil law. And employers that violate that -- that law can be fined, they can be

put out of business. . . . Are you aware of that?").   Such questions on cross-examination are inappropriate, confusing, and irrelevant, and the defense should be precluded from asking them at trial.   Further, this tactic invades the province of the Court, which will instruct the jury regarding the applicable law.

Even if the civil laws and regulations had some marginal probative value, it is nevertheless substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.   Indeed, the only conceivable reason for the defense to offer civil provisions into evidence would be to confuse the elements of the criminal violations charged, in hopes that the jury may acquit the defendants out of sympathy, emotion, or misunderstanding, which is never "a permissible basis for admitting otherwise irrelevant evidence."   *United States v. Funches*, 135 F.3d 1405, 1408-09 (11th Cir. 1998).

Accordingly, the defendants should be precluded from offering into evidence civil laws, administrative regulations, and remedies through direct testimony, cross-examination, or referring to them in their opening statement or closing argument.

    iv.  Improper Testimony or Argument Regarding Charging Decisions by the Government

The government anticipates that the defense may attempt to introduce evidence or arguments related to the government's charging decisions in this case.    The defendants should be precluded from interjecting into the trial any evidence, argument, or suggestion regarding the government's charging decisions, including arguments concerning selective prosecution, outrageous government conduct, or reference to similarly situated people in the organization who remain uncharged.

First, the Supreme Court has recognized that "[i]n our criminal justice system, the government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). The latitude traditionally granted to the government in this respect extends as much to the decision of who not to prosecute, as to decisions of who to prosecute. *See, e.g.*, *Wayte*, 470 U.S. at 607. Given the broad discretion traditionally afforded to prosecutors, courts have consistently held that evidence or argument regarding charging decisions should not be admitted at trial. *See United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (the fact of the government's decision not to prosecute someone other than defendant was not admissible under Rule 403 as misleading and confusing to the jury); *United State v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury."); *United States v. Bryant*, 5 F.3d 474, 476 (10th Cir. 1993).

Second, the claim that others "could have been charged but were not" has no probative value, as it neither negates an element of the charges nor establishes a defense. *See* Fed. R. Evid. 401, 402. Rather, this claim is a constitutional defense of selective prosecution. Even if the defendants had such a claim, it is never one that can be made to the jury. *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995).

Finally, evidence that other individuals remain uncharged carries great danger of jury confusion. *See* Fed. R. Evid. 403. The jury's role is to consider all the evidence and determine whether the prosecution has proved its case. It is not for the jury to weigh the "fairness" of the government's decision to charge certain individuals but not others. Allowing "fairness" arguments of this type to be made—that these defendants should go free because others were not charged—allows just that sort of danger for jury confusion. S*ee United States v. McVeigh*, 153

26

F.3d 1166,1192 (10th Cir. 1998) ("Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty.   The jury is not asked to render judgement about non-parties, nor is it normally asked to render a verdict on the government's investigation."); *United States v. Johnson,* No. 08-466, 2011 WL 809194 (N.D. Ill. March 02, 2011) (granting government's motion *in limine* to preclude evidence regarding the government's charging decisions because "the Government's charging decisions are not relevant to the issue of whether [defendant] is guilty or innocent of the crimes for which he is charged").

> v.   Improper Testimony Regarding Penalties Associated with Charged Offenses

The government respectfully requests that the defendants be prohibited from attempting to introduce evidence or argue about the potential penalties or collateral consequences associated with a conviction for the charged offenses.

It is well settled that arguments or evidence regarding punishment are improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence.  *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[A] jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975))); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict.").   Indeed, the Tenth Circuit has unequivocally stated that the "there is abundant authority that it is improper to inform the jury of the defendant's possible punishment."   *United States v. Jones*, 933 F.2d 807, 811 (10th Cir. 1991); *accord* Tenth Circuit Pattern Jury Instructions (Criminal Cases), 1.20 (2023) ("If you find the

defendant guilty, it will be my duty to decide what the punishment will be.   You should not discuss or consider the possible punishment in any way while deciding your verdict.").

The rationale for excluding penalty evidence is plain—the penalties associated with a conviction are not probative of guilt or innocence.   *Rogers*, 422 U.S. at 40 ("[T]he jury had no sentencing function and must reach their verdicts without regard to what sentence might be imposed.").   Instead, evidence relating to the punishment and the collateral effects of a conviction serve only to compromise the verdict, confuse the jury, or invoke sympathy for the defendant. *See United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980) ("Absent a statutory requirement that the jury participate in the sentencing decision, nothing is left for jury determination beyond the guilt or innocence of an accused." (internal citation and quotation omitted)).

> vi.   Improper Testimony Regarding Defendants' General Good Character or Specific Instances of Good Conduct

The government asks that the Court exclude any evidence of the defendants' general good character or evidence of specific instances of good conduct.   Under the Federal Rules of Evidence, a defendant may present character evidence via reputation or opinion testimony regarding lawfulness and often regarding truthfulness—and the prosecution is allowed to rebut the same. Fed. R. Evid. 405(a); *United States v. McHorse*, 179 F.3d 889, 901-02 (10th Cir. 1999).   However, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."   Fed. R. Evid. 404(a). Consequently, when character is not an essential element of the offense, character evidence may only be presented through "testimony as to reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a).

Indeed, Rule 404(a) "carefully limits the circumstances under which character evidence may be admitted to prove that an individual, at the time in question, acted in conformity with his character." *Perrin v. Anderson*, 784 F.2d 1040, 1044 (10th Cir. 1986). This Rule's necessity derives from "the high degree of prejudice that inheres in character evidence." *Id.* Courts are reluctant—indeed, in most cases unwilling—"to permit a jury to infer that an individual performed the alleged acts based on a particular character trait." *Id.*

Likewise, a defendant may not offer evidence of specific instances of good conduct or the absence of bad conduct. *See United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (noting that "specific acts of good character were inadmissible under [the] Rules"); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (holding that court properly excluded evidence that defendant had devoted his life to caring for a son with cerebral palsy); *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) (holding that court properly excluded evidence that defendant did not overcharge in certain instances because such evidence is improper under Rule 405 as specific acts of good character); *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) ("[T]estimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)".).

Judged by these principles, the defendants should not be permitted to introduce evidence that they possess a generally "good" character—such as that they are family-oriented, are community participants, or are moral and ethical people. *See United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991) (excluding evidence that defendant was a good family man and a kind man because it was not a trait relevant to the offense); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (holding that evidence of "bravery, attention to duty, perhaps

community spirit were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010-11 (D. Md. 1985) (holding "patriotism" not relevant trait to charge).

Similarly, the Defendants should not be permitted to put on evidence of specific acts of good conduct—such as incidents: (a) of caring for their children; (b) of religious services; (c) of charitable work or community service; (d) of honesty; (e) of the lack of prior bad acts; or (f) of any other specific instances of "good" conduct.  *See United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) ("[W]hen defendant "attempted to elicit testimony from witnesses regarding specific instances . . . , [e]ach time, the district court correctly determined that although [defendant] was entitled to present character evidence, he could not do so by offering evidence of specific instances of his conduct"); *Ellisor*, 522 F.3d at 1270 (holding that district court properly excluded "extrinsic evidence of purportedly legitimate business activities in order to negate evidence of his fraudulent intent with respect to the" charged conduct); *United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (holding that defendant police officer's commendations properly excluded because they were neither "pertinent" nor probative of an essential element); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (noting that a "defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions"); Fed. R. Evid. 404(a).

vii.   Other Jury Nullification

Although the government is unable to anticipate every form of "jury nullification" argument or evidence that the defendants may seek to interject into this trial, the government does note the following evidence or arguments that should be precluded:

(1) sympathy for the defendants or their families;
(2) the defendants' financial condition, past or present, including losing business; and

30

(3) any charity or community work completed by the defendants.

*See United States v. Perez*, 459 F. App'x 191, 198 (3d Cir. 2012) (family and work life not relevant and "pose[d] an improper risk of jury nullification"); *United States v. Copeland*, 291 F. App'x 94, 97 (9th Cir. 2008) (evidence excluded because "possible prejudice to the government of jury nullification based on sympathy").   All such evidence should be excluded because it is irrelevant to the issues at trial and could promote jury nullification.

Respectfully submitted,

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By: */s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Phone:  913-551-6730
Fax:  913-551-6754
Email:  Ryan.Huschka@usdoj.gov
KS Bar No. 23840


KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL

By: */s/ Kate A. Alexander*
Kate A. Alexander
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  202-353-3539
Email:  Kate.Alexander@usdoj.gov
FL Bar No. 27393

31

By: */s/ Maryam Zhuravitsky*
Maryam Zhuravitsky
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:   202-532-3592
Email:   Maryam.Zhuravitsky@usdoj.gov
MD Bar No. 1312190348

By: */s/ Francisco Zornosa*
Francisco Zornosa
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:   202-616-4588
Email:   Francisco.Zornosa@usdoj.gov
NY Bar No. 5477245

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in the above-captioned case.

_s/ Ryan J. Huschka_
RYAN J. HUSCHKA
Assistant United States Attorney