IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

RANDOLPH HADLEY,

    Defendant.

Case No. 21-20060-JAR-4

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Randolph Hadley's Motion for Release Pending Appeal (Doc. 739). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated in detail below, the Court denies Defendant's motion for release pending appeal.

**I.    Background**

The Indictment in this case charged Defendant Randolph Hadley in Count 1 with conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 and 1589. Counts 6 through 8 charged him with substantive forced labor violations under 18 U.S.C. §§ 1589, 1594(a), and 2. Hadley proceeded to trial. On September 16, 2024, after deliberating for four days, the jury returned its verdict, finding Hadley guilty on Count 1 and not guilty on Counts 6 through 8. The Court denied his post-trial motions and sentenced him to the statutory maximum sentence of five years in custody.[1] Hadley filed a notice of appeal on August 18, 2025.[2] He now moves for release on bond pending appeal. The Government opposes the request.

---

[1] Docs. 586, 662.

[2] Doc. 673.

## II. Standard

Hadley first moves for release under 18 U.S.C. § 3143(b)(1).[3] Under that provision, a defendant "who has been found guilty of an offense and sentenced to a term of imprisonment" shall be detained unless the Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Alternatively, Hadley urges the Court to release him under 18 U.S.C. § 3145(c) because he can "clearly show[] that there are exceptional reasons why [his] detention would not be appropriate."[4]

## III. Discussion

### A. 18 U.S.C. § 3143(b)(1)

Hadley first requests release pending appeal under § 3143(b)(1). Under this provision, the defendant must first show by clear and convincing evidence that he is neither a flight risk nor a danger to the community if released. Hadley has been on pretrial release since he made his

---

[3] Defendant was not found guilty of an offense for which mandatory detention applies under § 3143(b)(2).

[4] Doc. 739 at 2–3; *see United States v. Jones*, 979 F.2d 804, 805–06 (10th Cir. 1992) (holding that § 3145(c) applies to district courts). *But see United States v. Rausch*, 746 F. Supp. 2d 1192 (D. Colo. 2010) (disagreeing with *Jones* and finding that § 3145(c) does not give district courts discretion to release a defendant).

first appearance on October 28, 2021, and has had no issues with complying with bond conditions. Hadley also has ties to the community that weigh against finding that he poses a flight risk, including that he lives with his elderly mother, for whom he is a caretaker. The Court finds by clear and convincing evidence that Hadley is not likely to flee or pose a danger to the safety of any other person or the community if released.

Second, Defendant must demonstrate that his appeal is not for the purpose of delay. The Court finds that it is not; Defendant filed a timely notice of appeal after his sentencing. There is no evidence that it was filed for purposes of delay.

Finally, Defendant must show that the appeal raises a substantial question of law that is likely to result in reversal or a new trial. Whether an appeal presents a substantial question is a case-by-case inquiry.[5] A substantial question "is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way."[6] Defendant argues that the following substantial questions of law are likely to result in reversal or a new trial: (1) there was insufficient evidence that demonstrated Hadley's disciplinary role in the conspiracy caused the victims' forced labor; and (2) the jury received an unduly coercive *Allen* charge on the third day of deliberations. The Court finds that neither issue presents a substantial question of law that is likely to result in reversal or a new trial.

### 1. Sufficiency of the Evidence

Hadley argues, as he did throughout this case, that to the extent the evidence at trial supported his physical abuse or discipline of victims, it was not tied to forced labor. Instead,

---

[5] *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985) (en banc).
[6] *Id.*

Hadley insists his isolated punishments were part of a disciplinary structure at the United Nation of Islam ("UNOI") school where he taught. And Hadley argues that he lacked policymaking authority within UNOI and acted only as a local captain; thus, he lacked knowledge of the larger forced labor conspiracy. Hadley points to evidence from trial that he was demoted from his captain position in June 2011 and had no authority within the organization after that point.

The Court ruled in limine that the forced labor statute only requires the Government to show that Defendants secured labor either through threats of serious harm or physical restraint, or through a scheme, plan, or pattern intended to cause the victim to believe that non-performance would result in serious harm; it does not require a "quid pro quo" showing of nexus.[7] There is no substantial question about the fact that the Government did not need to prove that Hadley's discipline was a direct effort to obtain forced labor.

Moreover, viewing the evidence in the light most favorable to the Government, as the Court was required to do in ruling on Defendants' sufficiency of the evidence challenge post-trial, the Court explained that a reasonable jury could have found that there was a sufficient nexus between the physical abuse UNOI members sustained and the performance of labor. The Court also found that this is not one of the "exceptional cases in which the evidence preponderates heavily against the verdict," necessitating a new trial.[8] Specifically, there was

---

[7] Doc. 317; *see United States v. Toure*, 965 F.3d 393, 401–02 (5th Cir. 2020) (finding that physical acts of violence not directly tied to the victim's own labor "caused [the victim] to remain with the defendants because she faced threats of serious harm, or reasonably believed she would face serious harm, if she did not provide them with her labor and services"); *see also United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015) (considering 2008 version of the statute and holding "[t]he evidence at trial demonstrated Mr. Kalu repeatedly threatened the foreign nationals with legal action, revocation of their visas, deportation, and financial ruin, and some individuals testified he put them in fear of physical harm. These are precisely the types of threats that could 'compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.'"); *United States v. McIntyre*, 612 F. App'x 77, 80 (3d Cir. 2015) (explaining that coercion under § 1591(a), even before the 2008 amendments, "does not require the direct cause-and-effect connection [the defendant] posits").

[8] *See United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994).

4

substantial evidence upon which the jury could find that UNOI's school and businesses were part of the same organization and any punishment suffered in the school setting created the climate of fear that caused these minors to perform labor or services against their will.[9]  And the Court found sufficient evidence that Hadley was part of the conspiracy that used this climate of fear in order to obtain forced labor.

Although Hadley was not a National Minister, he was a local Fruits of Islam ("FOI") Captain in Kansas, meaning he had responsibility for teaching FOI classes and overseeing the men.  Hadley used his chemistry background to develop and run the biodiesel lab that made diesel fuel for UNOI's trucks and other vehicles used in the business.  And Hadley taught and utilized UNOI children in this work.  There was also evidence that although Hadley taught math and science at the University of Islam, he focused his efforts on teaching the children how to perform limited tasks in their assigned work duties, rather than teaching the children math and science that would educate them for the outside world.  Hadley reported directly to Royall or Defendant Kabaa Majeed and, according to Defendant Etenia Kinard, Hadley had authority to make some decisions independently.  He also enjoyed some special privileges and lived better than the average member, with live-in household labor and childcare, more freedom to engage with the outside world, and owning vehicles, including his own motorcycle.

Finally, Hadley argues that there was evidence presented at trial of his demotion in June 2011, at which point his only role was to work in the biodiesel lab.  First, even if the evidence established that Hadley was demoted in June 2011, it was not sufficient to constitute withdrawal

---

[9] *See United States v. Marcus*, 487 F. Supp. 2d 289, 310 (E.D.N.Y. 2007) ("[T]he government could satisfy the second element by showing a connection between punishments imposed by the defendant and the labor or services at issue or a climate of fear that was sufficient to cause her to perform labor or services against her will."), *vacated by* 538 F.3d 97 (2d Cir. 2008), *rev'd,* 560 U.S. 258 (2010), *aff'd in part, vacated in part, remanded on other grounds,* 628 F.3d 36 (2d Cir. 2010).

from the conspiracy as a matter of law because there was no evidence of his "affirmative action . . . to disavow or defeat the purpose" of the conspiracy.[10] Furthermore, a June 2011 withdrawal would terminate Hadley's "liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy."[11] Thus, Hadley's demotion did not constitute withdrawal from the conspiracy, and even if it did, it does not impact his liability for the conspiracy itself, which began on October 28, 2000. The Court does not find that Hadley's sufficiency challenges pose a substantial question that could result in reversal or a new trial based on the sufficiency of the evidence.

### 2. *Allen* Charge

Next, Hadley argues that whether the Court erred when it gave the jury a modified *Allen* instruction on the third day of deliberations is a substantial question of law that is likely to result in reversal or a new trial. The Court disagrees. On the third day of trial, after the jury submitted several questions to the Court suggesting it was at an impasse, the Court opted to give the jurors Tenth Circuit Pattern Instruction 1.42.[12] Defendants objected that it was unduly coercive. The Court overruled the objection and later denied Defendants' motion for new trial on this ground. The Court considered the applicable factors to determine whether an *Allen* instruction is improperly coercive: "(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations."[13]

---

[10] *Smith v. United States*, 568 U.S. 106, 113 (2013) (quoting *Hyde v. United States*, 225 U.S. 347, 369 (1912)).

[11] *Id.* at 111.

[12] Tenth Cir. Crim. Pattern Instr. 1.42 (2021).

[13] *United States v. Coulter*, 57 F.4th 1168, 1192 (10th Cir. 2023).

Under the first factor, the Court found that the instruction "urge[d] all jurors, not just those in favor of acquittal, to reconsider their views" and "stresse[d] the importance of . . . being an impartial, deliberate fact-finder," which the Tenth Circuit suggests points away from coercion.[14] Under the second factor, the Court told the jury to apply the *Allen* instruction together with all of the other instructions it read.  Third, with respect to timing, the Court read the instruction after several questions in a row from the jury suggesting it was struggling with the issue of reaching a unanimous verdict.  The Court did not "issu[e] the instruction sua sponte in order to hasten the return of a verdict."[15]  And finally, the jury did not immediately return a verdict after hearing the *Allen* instruction.  The jury returned to the jury room and deliberated for the rest of that afternoon, until 4:45 p.m.  The jury also deliberated the following morning, and Court was convened at 11:40 a.m. in order to announce the verdict.[16]  Under the applicable factors, it is not a close question that there was no improper coercion in the modified *Allen* instruction the Court provided on the third day of the jury's deliberations.

In sum, Hadley has not presented a close question, or one that could be decided the other way, that may result in reversal or a new trial.  Accordingly, his motion for release on bond pending appeal under 18 U.S.C. § 3143(b)(1) is denied.

### B.     18 U.S.C. § 3145

Defendant argues that even if he does not meet the standard set forth in § 3143(b)(1), he should be released based on exceptional circumstances; namely, that he is the primary caregiver for his seriously-ill mother.  When combined with his exemplary conduct on release and the

---

[14] *Id.* (quoting *United States v. Cornelius*, 696 F.3d 1307, 1322 (10th Cir. 2012)).

[15] *Cornelius*, 696 F.3d at 1322.

[16] *Coulter*, 57 F.4th at 1193 (quoting *Cornelius*, 696 F.3d at 1323) (determining that the jury's deliberation "for several hours after the district court delivered the *Allen* instruction" was a "relatively long period," which "tends to negate an inference of improper coercion").

Government's weak case, Defendant asks the Court to find exceptional circumstances justify his release pending appeal under 18 U.S.C. § 3145.

This provision does not apply in this case. The statute states that, "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." Defendant is not subject to mandatory detention under § 3143(b)(2). And, as stated above, he does not meet the conditions set forth in § 3143(b)(1). Thus, even if Defendant demonstrated extraordinary circumstances, this provision would not provide for his release.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Randolph Hadley's Motion for Release Pending Appeal (Doc. 739) is **denied**.

**IT IS SO ORDERED.**

Dated: December 4, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
